UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

CLEMENTE M. D'ALESSIO and
RITA L. D' ALESSIO,

                        Debtors.
-----------------------------------------------------------X
ROBERT L. PRYOR, the Chapter 7 Trustee
of the Bankruptcy Estate of
CLEMENTE M. D'ALESSIO and RITA D'ALESSIO,

                        Plaintiff,

            -against-

CLEMENTE M. D'ALESSIO, NEIL BOYLE,
HORIZON BUS CO., INC. and
HORIZON COACH, INC.,

                        Defendants.
-----------------------------------------------------------x
ROBERT L. PRYOR, the Chapter 7 Trustee
of the Bankruptcy Estate of
CLEMENTE M. D'ALESSIO and RITA D'ALESSIO,

                        Plaintiff,

            -against-

CLEMENTE M. D'ALESSIO,

                        Defendant.
-----------------------------------------------------------x

Case No. 8-08-72819-reg

Chapter 7

Hon. Robert E. Grossman

Adversary Proceeding
No. 8-10-08187-reg

Adversary Proceeding
No. 8-12-08095-reg

## DECISION AFTER TRIAL

        Before the Court are two related adversary proceedings brought by the chapter 7 Trustee.

In the first adversary proceeding, No. 10-8187, the Trustee asks the Court to find that three

related business entities—two of which the Debtor claims he has no legal interest in, but all of which are engaged in the operation of a charter bus business managed by the Debtor—are a single business enterprise, that the enterprise is the alter ego of the Debtor, and that, therefore, the enterprise's corporate assets are property of this bankruptcy estate. In the second adversary proceeding, No. 12-8095, the Trustee seeks to revoke the Debtor's discharge pursuant to § 727(d)(2) because of the Debtor's alleged failure to disclose his interest in the business enterprise and because of the Debtor's alleged post-petition use of business assets for his personal benefit to the detriment of the estate's creditors.

 The Trustee's theory of this case is grounded in the argument that the three separate entities are in fact operated as a single business. The Trustee asks the Court to find that as a matter of law they are a single unit. The problem with this argument, regardless of the legal merits, is that the Trustee failed to join one of those entities, Horizon Coach Tours, Inc. ("Tours"), or its legal owner, John Tomassi, as defendants in these proceedings. Whether this omission was strategic or merely an omission it leaves the Court with no recourse but to deny any relief that affects the legal rights of Tours or Tomassi or seeks a finding that Tours should be merged with defendants Horizon Coach, Inc. ("Coach") and Horizon Bus, Inc. ("Bus") into a single entity.

As to Coach and Bus, however, the Court will grant the Trustee partial relief. The parties concede that, pre-petition, Coach was 100% owned[1] and controlled by the Debtor. This ownership now vests with the Trustee of the Debtor's estate. However, the Debtor disputes that he held any ownership interest in Bus on the date of the bankruptcy filing. The record, however,

---

[1]       Schedule "B" of the petition lists the Debtor as owner of 100% of Coach's shares. The Debtor testified, however, that he believed he owned approximately 70% of the shares, and his wife owned the remaining shares. Tr. 8/23/12 at 41-42. Because both the Debtor and his wife are Debtors in this case, the exact percentage of their ownership does not affect this Court's analysis.

supports a contrary view.  The Court finds that the record in this case supports a finding that the corporate veils of Coach and Bus should be pierced with respect to each other with the effect that Coach and Bus should be treated as a single business entity owned and controlled by the Debtor – and that this ownership existed as of the petition date and is therefore property of the Debtor's estate.  The Trustee also seeks to reverse pierce the corporate veil of Coach and Bus as to the Debtor which would have the effect of holding the combined corporate entity liable for the Debtor's debts and making the corporate assets property of the estate.  Although the record does support a finding that the Debtor exercised dominion and control over the operations of the combined corporate entity, the Trustee has failed to prove that the Debtor used the corporate entity to pursue his own personal endeavors or that he did not observe distinctions between personal and business matters.  For these reasons and for the reasons more fully explained herein, the Court finds that the Trustee has failed to sustain his burden of proving each of the elements of piercing the veil under New York law in the context of reverse piercing the veil as between the combined corporate entity and the Debtor.

As to the Trustee's attempt to revoke the Debtor's discharge, this Court finds that § 727(d)(2) can be utilized to revoke a discharge only for knowingly and fraudulently failing to report and turnover property of the estate that the Debtor acquired or became entitled to acquire post-petition.  Although the Debtor's conduct in this case may have been redressable under some other subsection of § 727(a) or (d), the time has passed for that relief, and the Court is constrained to apply only § 727(d)(2) in this case.  The Court finds that the Debtor's discharge cannot be revoked under § 727(d)(2) for his failure to report and turnover his ownership interest in Bus, as that interest existed prepetition, i.e., the Debtor did not acquire it, or become entitled to acquire it, post-petition.  The Trustee's remaining allegations regarding the Debtor's improper

utilization and failure to report and turnover corporate assets of Coach, Bus, and Tours must also fail.  First, the Trustee has presented the Court with only bare allegations that the Debtor improperly utilized corporate assets, and the Debtor has sufficiently rebutted those assertions. Second, those assets are property of the corporation, not the Debtor, and therefore are not property of the Debtor's bankruptcy estate.  Because § 727(d)(2) applies only to a Debtor's failure to report or turnover "property that is . . . or . . . would be property of the estate," the Debtor's discharge cannot be revoked on those grounds. 11 U.S.C § 727(d)(2).  Therefore, for these reasons and as explained more fully herein, the Debtor's discharge will not be revoked.

## FACTS

On May 28, 2008, Clemente D'Alessio (the "Debtor") and his wife, Rita, filed a joint petition under chapter 7 of the Bankruptcy Code (together, the Debtor and Rita are referred to herein as the "Debtors").  Robert L. Pryor was appointed as the chapter 7 trustee (the "Trustee" or "Plaintiff").  On Schedule "B" of the petition, the Debtor disclosed ownership of 100% of the shares in Horizon Coach, Inc. ("Coach"), a charter bus business formed in 1987.  The Debtor did not list an ownership interest in any other entity.  On Schedule "F" of the petition, the Debtor listed unsecured debts of $5,964,234.00, largely derived from his business activities.  On April 7, 2010, the Debtors received their discharges in bankruptcy.

At the center of these adversary proceedings are two related entities in which the Debtor claims no ownership interest:  Horizon Bus, Inc. ("Bus") and Horizon Coach Tours, Inc. ("Tours").  Including Coach, all three entities conduct their business operations at the same address and use the same phone number.  The Debtor testified that he and his sister incorporated Bus in 2004 specifically because the Debtor was having trouble obtaining credit to pay Coach's

expenses.  Transcript ("Tr.") 8/23/2012 at 47-48.  Subsequent to Bus's incorporation, the Debtor

approached Neil Boyle ("Boyle"), an employee of Coach, and they agreed that the Debtor would

"give [Boyle] the business" in exchange for Boyle providing his personal credit cards to "keep

the business running." Tr. 8/23/12 at 19, 31, 47, 64.  In February 2004, Boyle became the sole

shareholder of Bus.  Defendants' Ex. C, D; Tr. 8/23/12 at 20.  The Debtor testified that Coach's

assets—which included several coach buses, some equipment and parts, customer lists, and

goodwill—while being  operated and used by Bus were never legally transferred to Bus.  Tr.

8/23/12 at 48, 64.  In his petition, the Debtor scheduled gross income of $7,800.00 per month

from his employment as general manager of Bus.  The Debtor admitted that he ran nearly all of

Bus's operations, but claimed he never considered himself an owner of Bus, which he states is

owned entirely by Boyle.  Tr. 8/23/12 at 36-37, 49, 126.  Boyle testified he left the business in

2008, Tr. 8/23/12 at 31-32, although he is still the record owner of Bus.

    The Debtor also claims he has no ownership interest in Tours, which he states is owned

by John Tomassi ("Tomassi"), the Debtor's long-time insurance broker.  Despite the

Organizational Minutes for Tours listing the Debtor as the Vice President, director, and a

shareholder of Tours, Tomassi testified the Debtor was not a shareholder and he did not believe

any shares had been issued.  *See* Trustee's Ex. 39; Tr. 12/06/12 at 23, 83.  Tomassi testified that

Tours was incorporated in 2006 for the purpose of "financing buses for Horizon Coach."  Tr.

12/06/12 at 66.  The Debtor and Tomassi agreed that Tomassi would fund a deposit of $15,000

for each of three coach buses purchased by Tours, and the Debtor would make all the monthly

payments. Tr. 12/11/12 at 91-92.  After the loans were repaid, Tomassi would own the buses. Tr.

12/11/12 at 92.  Tomassi would also earn commissions by brokering the insurance for the buses.

Tr. 8/23/12 at 101.  Aside from the original down payment paid by Tomassi, the Debtor

operated, maintained, and "took care of everything" relating to the buses. Tr. 12/11/12 at 91-92.

## PROCEDURAL HISTORY

On May 12, 2010, the Trustee commenced an adversary proceeding, No. 10-8187,

against the Debtor, Boyle, Bus, and Coach ("Declaratory Judgment Action").  In the amended

complaint, dated May 21, 2013[2], the Trustee asserts ten causes of action, seeking: (1) a

declaration that Coach is the alter ego of the Debtor, (2) a declaration that Bus is the alter ego of

Coach and the Debtor, (3) a declaration that the Trustee has an equitable lien on the Coach assets

transferred to Bus, (4) a money judgment against Boyle for his unjust enrichment by the transfer

of Coach's assets to Bus, (5) a declaration that the assets of both Coach and Bus are in fact

owned by Coach, which is the Debtor's alter ego, and therefore those assets are property of the

Debtor's bankruptcy estate subject to turnover, (6) fraudulent conveyance under N.Y. DCL §

273, (7) fraudulent conveyance under N.Y. DCL § 274, (8) fraudulent conveyance under N.Y.

DCL § 275, (9) fraudulent conveyance under N.Y. DCL § 276, and (10) an award of attorney's

fees under N.Y. DCL § 276-a.  The amended complaint fails to name or seek any relief against

Tours or Tomassi.[3]

On March 15, 2012, the Trustee commenced a separate adversary proceeding, 12-8095,

seeking to revoke the Debtor's discharge pursuant to § 727(d)(1) and § 727(d)(2) ("Revocation

Action").  In the Revocation Action, the Trustee alleges facts which were not previously

---

[2]        The Amended Complaint was filed to add the Debtor as a defendant.

[3]        Paragraph 8 of the amended complaint, in describing the parties to the action, does state that "[u]pon
information and belief, Horizon Coach Tours, Inc. d/b/a Horizon Coach, Inc. ("Horizon Coach") is a New York
corporation formerly doing business from 991 Station Road, Bellport, New York 11713."  However, this is the *only*
mention of Tours in the amended complaint.  Tours is not cited in the caption and was not served with the summons
and complaint.

articulated in the Declaratory Judgment Action but which are directly related to that action.

Specifically, the Revocation Action alleges the following:

12.    As of the Filing Date, [the Debtor] was indebted to Liberty Mutual Insurance Company in the amount of $530,787.00 for failure to pay insurance premiums."

. . .

23.    The Debtor, contrary to his testimony and representations, never transferred his interests in the business to Boyle.

28.    . . .  [I]n order to defraud creditors including but not limited to Liberty Mutual, he represented to others that he made the transfer of [Coach assets to Bus] in order to avoid the claim of Liberty Mutual and to obtain credit from lenders.

29.    Prior to the Filing Date, the debtor entered into an agreement with one John Tomassi ("Tomassi").

30.    They formed a shell corporation named Horizon Coach Tours, controlled by D'Alessio.

31.    [The Debtor] is a partner in that corporation.

. . .

37.    Upon information and belief, after the Filing Date and without notice to the Trustee, [the Debtor] refinanced the buses purchased in this scheme.

38.    Upon information and belief, [the Debtor] utilized the proceeds of the refinancing for his own purposes.

39.    In 2010, one of the buses was involved in an accident.

. . .

42.    Upon information and belief, the Debtor utilized the insurance proceeds for his own purposes.

. . .

45.    The Trustee also determined that a large amount of cash flows through the business.

46.    The Debtor failed to provide an intelligible accounting of the cash payments.

The Trustee subsequently conceded that the § 727(d)(1) claim was not timely filed, and withdrew that claim.  In connection with the § 727(d)(2) claim, the Trustee "repeats and realleges" each of the factual allegations recited above, and further alleges that:

53.     The Debtor's post-petition utilization of a business with a value in excess of $200,000 generated a significant amount of costs.

54.     The good will and assets utilized by the Debtor post-petition is property of the Debtor's bankruptcy estate.

55.     By virtue of the Debtor's material misstatements and omissions, the Debtor utilized funds generated by the goodwill of property of the Debtor's estate for his own benefit to the detriment of his creditors.

56.     These acts constitute conversion.

57.     [The Debtor] has failed to adequately report to the Trustee or give an accounting.

58.     [The Debtor] has failed to turnover property to the Trustee.

The Court conducted a trial on both adversary proceedings, on a consolidated basis, on August 23, 2012, December 6, 2012 and December 11, 2012.  The Debtor, Boyle, Tomassi, and Geraldine Wolk, CPA—who was qualified as an expert witness for the Trustee—testified at trial. The deposition of Jack Flax—Coach and Bus's tax preparer— taken on June 23, 2011, was admitted into evidence in lieu of his testimony at trial.  *See* Trustee's Ex. 6.  The Court admitted into evidence, the Trustee's Exhibits 1, 6, 16, 22, 26, 27, 29, 36-40, 43-49 and Defendants' Exhibits A-E, and F, in part.

In his post-trial Proposed Findings of Fact and Conclusions of Law, the Trustee asks that the Court find there was no transfer of Coach's assets to Bus, and Boyle was not an owner of Bus.  Rather, the Trustee contends that Coach, Bus, and Tours were a single "Bus Business" owned by the Debtor and Tomassi jointly as a *de facto* partnership, joint venture, or joint enterprise.  Furthermore, the Trustee argues that Tours should be held liable for the debts of

Coach and Bus, which are alter egos of the Debtor, under a theory of successor liability. Therefore, according to the Trustee, the Debtor has ownership interests in all three entities, which are property of the Debtor's bankruptcy estate subject to turnover to the Trustee. The specific conclusions of law proposed by the Trustee are: (1) Bus and Coach were the alter egos of the Debtor who placed them into a partnership/joint venture/joint enterprise with Tours, (2) The Debtor has a property interest in the Bus Business—which is one enterprise including Coach, Bus and Tours—the assets of which are property of the Debtor's bankruptcy estate, (3) the Bus Business is a partnership/joint venture/joint enterprise between the Debtor and Tomassi, (4) the Debtor's testimony that he transferred his interest to Boyle was false, and (5) the Court should revoke the Debtor's discharge.

On February 11, 2013, the Trustee moved, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to conform the pleadings to include "the facts obtained and the issues which were presented at trial." The motion refers back to the Trustee's Proposed Findings of Fact and Conclusions of Law and "requests that the Court accept and consider as plead the findings and conclusions of law which were not pled in the complaints or amended complaints previously filed." Motion ¶ 8. The motion does not name any specific cause or causes of action that the Trustee wishes to add. Prior to the scheduled hearing on the motion, on March 6, 2013, the parties filed a "Consent" to the motion. The motion was neither served upon, nor consented to by, Tours or Tomassi.

Included among the proposed amendments to the pleadings, which ultimately were so-ordered by the Court, is a conclusion that the assets of Coach were never transferred to Bus. As such, seven of the Trustee's ten causes of action asserted in the Declaratory Judgment Action—

i.e., those that allege that the assets of Coach were transferred to Bus[4]—have been effectively withdrawn from this Court's consideration.

To the extent that the Trustee intended to amend the pleadings to seek a ruling by this Court that Coach, Bus *and Tours* are one "bus business"—jointly owned by the Debtor *and Tomassi*—which should be liable under a successor theory for the debts of Coach and Bus, the Court must deny that relief.  The Trustee by failing to name in this action, either as a matter of strategy or mistake, Tours or Tomassi has made it impossible for the Court to grant any relief affecting the ownership of Tours or the rights of Tomassi because to do so would be a violation of the most basic right of due process.  *See Nykcool A.B. v. Pac. Fruit Inc.*, No. 10 Civ. 3867(LAK)(AJP), 2012 WL 1255019 at *5 (S.D.N.Y. Apr. 16, 2012) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100 (1969)).  Only the Debtor, Boyle, Bus, and Coach are defendants in this action, and the Court is constrained only to make findings regarding their respective ownership interests and liabilities.

The remaining issues before the Court relative to the Declaratory Judgment Action are whether Coach is the alter ego of the Debtor (1st cause of action); whether Bus is the alter ego of Coach and the Debtor (2nd cause of action); and whether the "Business Assets" of Bus are in fact still owned by Coach, and therefore property of the estate subject to turnover (5th cause of action).  If it was the Trustee's intention, in the motion to amend the pleadings to conform to the facts, to add additional causes of action or theories as to the named defendants, that intention was indecipherable.

---

[4]    Specifically, the 3rd, 4th, and 6th through 10th causes of action rely on an alleged "transfer" of Coach assets to Bus.

**DISCUSSION**

**I.      The Declaratory Judgment Action, Adv. Proc. No. 10-8187**

As described above, the Trustee's 1st and 2nd causes of action request two related but distinct alter ego findings: first, a finding that Bus is the alter ego of Coach and, second, a finding that Coach and Bus are alter egos of the Debtor.  The Trustee, therefore, is seeking to pierce the corporate veils of Coach and Bus[5] and remove any corporate distinctions between those entities.  The Trustee also seeks to remove the corporate distinctions between the corporations and the Debtor.  These are distinct causes of action but allow for the same analysis. *See D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 197 (2d Cir. 2005) ("[V]eil piercing may be used 'to reach the assets of either the individual [owners] *or* the other [owner]-controlled corporate entities.'") (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139-40 (2d Cir. 1991)) (alteration in original).

To pierce the corporate veil in New York, the plaintiff has the burden of proving that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. *See Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993).

In analyzing whether the first element of veil piercing—that the owners exercised complete domination of the corporation—has been satisfied, the Second Circuit has enumerated a non-exhaustive list of factors that tend to identify a dominated corporation:

---

[5]      The Amended Complaint does not use the term "piercing the corporate veil" or any variation thereof. However, the Court construes the 1st and 2nd causes of action as asserting a veil piercing theory because the allegations therein track factors normally asserted to support a veil piercing theory and because they seek to remove the corporate distinctions among Coach, Bus, and the Debtor, which would result from a finding that veil piercing is warranted.

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Builders, Inc.,* 933 F.2d at 139.  "No one factor is determinative and courts must conduct a broad-based inquiry into the totality of the facts to determine whether the party seeking to pierce the corporate veil has established the domination prong of the test." *Id.*

The second element of veil piercing—that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury—may be satisfied "either upon a showing of fraud or upon complete control . . . that leads to a wrong against third parties." *Id*. at 138.

A.  **Whether Coach and Bus are alter egos of each other and, therefore, a single business entity – 2nd cause of action**

The Trustee's second cause of action asserts that Bus is the alter ego of Coach, the result being that Coach and Bus should be treated as a single entity.  Veil piercing may be used to remove corporate distinctions among corporations where the corporations are being operated by their individual owner as a single "corporate combine."  *See Gartner v. Snyder,* 607 F.2d 582, 587-88 (2d Cir. 1979).  *See also D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x  at 199 (holding that piercing was appropriate where two companies were "effectively operated by

their common owners as a single company"); *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 139-140.

As a preliminary matter, the Court finds that although record ownership of Coach and Bus is not common—i.e., documentation shows that Bus is owned by Boyle—the facts of this case establish sufficient control over Bus's operations by the Debtor to support a conclusion that the Debtor should be considered, at least for purposes of piercing the corporate veil, the equitable owner of Bus. The equitable ownership doctrine provides that, for purposes of piercing the corporate veil, "an individual 'who exercise[s] considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and acting as though [its] assets [are] his alone to manage and distribute' may be deemed the equitable owner of the corporation and its assets, notwithstanding the fact that the individual is not a shareholder and does not occupy a formal position of authority." *In re Vebeliunas*, 332 F.3d 85, 91 (2d Cir. 2003) (citing *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (alteration in original).

The Debtor testified that he formed Bus with his sister and after Boyle became its sole shareholder, the Debtor appointed himself as manager. Tr. 8/23/12 at 47, 54. Boyle had little to do with Bus's management and the record is devoid of any evidence that Boyle made any equity contribution. The Debtor was responsible for all aspects of its operations, including payroll, hiring, and firing of employees. Tr. 8/23/12 at 21-22. He met with accountants and arranged for insurance coverage for the buses. Tr. 8/23/12 at 22. He decided how much cash to give drivers, would check the driver's expenses, and deal with any discrepancies. Tr. 8/23/12 at 35-36. He was responsible for all business aspects relating to Bus, including depositing money into Bus's bank account, on which he was a co-signer. Tr. 8/23/12 at 33. In sum, as the Debtor testified, he "ran everything" for Coach and Bus. Tr. 8/23/12 at 49. He further admitted in his post-trial

brief, that he was "solely responsible for maintaining Horizon Coach/Bus's goodwill and customer relations . . .", and he "operated Horizon Coach/Bus and to the best of his abilities." Def's Post-trial Brief, at 19.  Based on these facts, it is appropriate to treat the Debtor as an equitable owner of Bus for veil piercing purposes.

Having established the Debtor's common ownership of Bus and Coach, the Court will now consider whether piercing the corporate veils of Coach and Bus is supported by the law and facts.  Applying the factors of the "domination" element of veil piercing enumerated above, it appears from the record that the Debtor treated Coach and Bus as a single company with indistinguishable businesses.  In sum, the Debtor "exercised complete domination over these businesses and, more to the point, used these entities interchangeably with no regard for their separate corporate identities." *D. Klein & Son, Inc.*, 147 F. App'x  at 198.  Coach and Bus shared a common address, used the same telephone number, had overlapping employees, and serviced the same customers.  Tr. 8/23/12 at 21, 66.  Further obfuscating their identities, the front door to the building simply says "Horizon," without distinguishing between Coach and Bus, and the buses had no names on them. *See* Trustee's Exhibit 36.  Tr. 8/23/12 at 46.  Despite the Debtor's contention that Coach ceased operations in 2008 and from then "everything" was operated through Bus—conceding that "All it was was a name change"—he acknowledged that an employee picking up the phone at the office might call the company "Horizon Coach."  Tr. 8/23/12 at 46, 49, 50.  The Debtor paid Coach and Bus's expenses from whichever had funds at the time; Coach and Bus were treated as one for tax purposes for several years; Bus's employees were on Coach's payroll; and Bus operated buses owned by Coach. Tr. 6/23/2011 at 17; Tr. 8/23/12 at 33, 54-55, 72-73.  The Debtor does not dispute these facts and the Debtor's counsel even conceded that "Coach and Bus . . . are essentially the same company."  Tr. 8/23/12 at 89.

Therefore, it is clear that Coach and Bus did not observe corporate formalities, were not treated as independent profit centers, and did not deal with each other at arms length. *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997). Based on these factors, the first element of veil piercing has been satisfied.[6]

As for the second element of veil piercing—that the individual owner's domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury—courts have held that it may be satisfied "either upon a showing of fraud or upon complete control . . . that leads to a wrong against third parties." *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 138. Shifting of corporate assets to shield them from creditors or to render the corporation judgment proof constitutes a fraud or wrong satisfying the second element of veil piercing. *See DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*, No. 99 Civ. 2231(HBP), 2005 WL 2848939 at *13 (S.D.N.Y. Oct. 28, 2005); *Freeman v. Complex Computing Co., Inc.,* 979 F.Supp. 257, 260-61 (S.D.N.Y. 1997).

It appears that the Debtor formed Bus for the purpose of diverting revenues from Coach's creditors. The Debtor testified that Coach never legally transferred any of its assets to Bus. Tr. 8/23/12 at 48. Rather, the Debtor explained that "the buses are still in Horizon Coach's name, but they're being operated under Horizon Bus." Tr. 8/23/12 at 48. The Debtor further testified that at some point in or after 2008, "everything"—including contracts the business entered into—

---

[6]    This finding is consistent with a decision of the United States District Court for the Eastern District of New York in an action commenced by Liberty Mutual Insurance Company seeking to hold Horizon Bus liable for unpaid insurance premiums owed by Horizon Coach. See *Liberty Mutual Insurance Co. v. Horizon Bus Co., Inc., et al,* CV-10-0449 (Feb. 22, 2011). In that action, the District Court granted default judgment and held Bus liable for the debts of Coach on a successor liability theory. The District Court found that Liberty Mutual adequately pled a claim under the "mere continuation" or "*de facto* merger" exception to the successor liability doctrine based on its allegations that Bus "is the mere continuation of the business of Horizon Coach . . . that both its customers and employees remained the same, that Horizon Bus continued to use the same buses, and the same corporate books, office space, and telephone number, and that Horizon Coach and its principals retained control over the operations transferred to Horizon Bus, and dominated the latter's operations. The two companies allegedly shared facilities, customer lists, employees, general business operations, buses and telephone numbers." *Liberty Mutual Insurance Co. v. Horizon Bus Co., Inc., et al,* CV-10-0449 (Feb. 22, 2011) (internal quotations and citations omitted).

was handled through Bus. Tr. 8/23/12 at 49.  Through this scheme, the Debtor shielded assets

from Coach's creditors by diverting revenue from Coach to Bus.  This scheme constitutes a fraud

or wrong satisfying the second element of veil piercing.

For all of the above reasons, the Court finds that Bus is the alter ego of the Coach and

will pierce the corporate veil and treat them as a single business entity.

Having found that Coach and Bus are a single business entity with no corporate

distinctions between them, the Court finds that the remainder of the Trustee's second cause of

action—i.e. to pierce the corporate veil between Bus and the Debtor—is moot.  Instead, the

Court will analyze this "reverse piercing" issue solely as it applies to Coach and Bus as one

combined entity (hereinafter referred to as "Coach/Bus") and will do so in the context of the first

cause of action.

### B.  Whether Coach is the alter ego of the Debtor – 1st cause of action

The Trustee's first cause of action seeks to reverse-pierce the corporate veil of Coach in

order to realize any value in the corporate assets to satisfy the claims against the Debtor in this

case.  New York law recognizes reverse veil piercing, whereby a corporation will be held liable

for the debts of a controlling shareholder or owner.  *See Sec. Investor Prot. Corp. v. Stratton

Oakmont, Inc.*, 234 B.R. 293, 321 (Bankr. S.D.N.Y. 1999) (citing *Am. Fuel Corp.,* 122 F.3d at

134; *LiButti v. United States,* 107 F.3d 110, 119 (2d Cir. 1997) ("reverse piercing . . . occurs

when the assets of the corporate entity are used to satisfy the debts of the controlling alter ego").

In determining whether to reverse pierce the corporate veil, courts use the same factors as used in

a traditional piercing analysis.  *See Am. Fuel Corp.,* 122 F.3d at 134.

Courts will pierce the corporate veil only when "the [corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation . . . and its separate identity so disregarded that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *16 Casa Duse, LLC v. Merkin*, No. 12 Civ. 3492(RJS), 2013 WL 5510770 at *14 (S.D.N.Y. Sept. 27, 2013) (quoting *Gartner*, 607 F.2d at 586). "The critical question is whether the corporation is a 'shell' being used by the individual shareowners to advance their own 'purely personal rather than corporate ends.'" *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 138 (quoting *Walkovszky v. Carlton*, 18 N.Y.2d 414, 418 (1966)).

The Court has already concluded that the Debtor completely controlled both Coach and Bus, and that Coach and Bus should be treated as a single corporate entity. This conclusion, however, is not determinative of whether the corporate distinctions between Coach/Bus and the Debtor should be disregarded. The New York Court of Appeals explained this distinction in *Walkovszky v. Carlton,* 18 N.Y.2d 414 (1966). In that case, Carlton was an individual shareholder of ten separate corporations, each of which had two taxis. The plaintiff sued Carlton after he was struck and injured by one of the corporations' taxis. The plaintiff attempted to hold Carlton and the other shareholders personally liable for his injuries, alleging that none of the corporations had a separate existence of its own. *Walkovszky*, 18 N.Y.2d at 416-18. The court stated: "[I]t is one thing to assert that a corporation is a fragment of a larger corporate combine which actually conducts the business . . . . It is quite another to claim that the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends." *Walkovszky*, 18 N.Y.2d at 418. The court held that the plaintiff had not stated a valid cause of action against Carlton

personally because he had "not alleged any particulars showing that Carlton was actually

conducting personal business, such as shuttling funds in and out of the corporations." *Gartner*,

607 F.2d at 587 (citing *Walkovszky*, 18 N.Y.2d at 420) (internal quotation marks omitted).

Similarly, in this case, there are few facts suggesting that the Debtor used Coach/Bus to

conduct his personal business.  There was testimony that the Debtor used his personal credit

cards for business expenses, but there is no allegation or testimony that the credit cards were

used for anything other than business expenses[7]—the Debtor testified, "I never bought a shirt or

went out to a restaurant with a credit card. This is all business." Tr. 8/23/2013 at 60; Tr.

6/23/2011 at 31-35.  The Trustee has presented no evidence that the Debtor "intermingled

corporate funds with his own." *Am. Fuel Corp.*, 122 F.3d at 135.  Geraldine Wolk, the Trustee's

expert witness, did note that it was unusual that 28% of Coach's cash disbursements were made

in the form of checks written to cash. Tr. 12/11/2013 at 19.  However, Jack Flax testified that

the Debtor wrote checks to cash because he needed cash to give to his drivers to pay for their

food and overnight hotel stays, and many road expenses—such as gasoline, repairs, supplies—

could only be paid for in cash. Tr. 6/23/2011 at 39.  Wolk also stated that the business's[8] "net

income as a percentage of total income was reasonably close to the IRS" tax statistics, suggesting

that the amount of expenses were within industry standards. Tr. 12/11/2013 at 22-23.  Although

a large number of checks were written to cash without documentation and this lack of

documentation "does demonstrate the [c]orporations' failure to observe the most fundamental of

corporate formalities," the record does not support a finding that the Debtor used corporate funds

for improper purposes.  *In re Adler*, 467 B.R. 279, 291 (Bankr. E.D.N.Y. 2012).  The only

---

[7]      Coach and Bus relied on the Debtor's personal credit cards to pay for business expenses. Indeed, both the Debtor and Boyle testified that the Debtor approached Boyle to become the owner of Bus in exchange for the use of Boyle's personal credit cards to fund operations. Tr. 8/23/2013 at 19-20, 71.

[8]      Wolk and her firm prepared a detailed report analyzing and valuing the business under the assumption that Coach, Bus, and Tours were a single enterprise without distinguishing between the three corporations.

evidence suggesting that the Debtor in any way used corporate funds for his personal use was Flax's testimony that the Debtor paid "a couple of mortgage payments" from Coach's bank account.  Tr. 6/23/2011 at 56, 87-88.  Although those payments were for the Debtor's personal use, Flax asserted they were properly treated as loan repayments that were owed to the Debtor. Tr. 6/23/2011 at 87-88.  The record does not support the finding that the Debtor used corporate funds for his personal use, and thus his actions did not amount to a "shuttling [of] personal funds in and out of the corporations."  *See Gartner*, 607 F.2d at 587 (holding that piercing the corporate veil was inappropriate where defendant did not use corporations to pursue personal business, despite the use of some funds for personal matters).

Based on the foregoing, the Court holds that the corporate veil of Coach/Bus should not be pierced as to the Debtor.  Although the Debtor may have disregarded the separate identities of Coach and Bus, he did not use Coach/Bus to pursue "purely personal rather than corporate ends." *Walkovszky*, 18 N.Y.2d at 418.


### C.  Whether the Coach/Bus assets are property of the estate subject to turnover – 5th cause of action

A corporation has a separate identity from its owners and, therefore, assets held by corporate entities are not property of an individual shareholder's bankruptcy estate.  *See Manson v. Friedberg*, No. 08 Civ. 3890(RO), 2013 WL 2896971 at *3-4 (S.D.N.Y. June 13, 2013) ("The fact that Defendant . . . holds an ownership interest in [an] entity does not give him an ownership interest in assets owned by that entity."); *In re Billingsley*, 338 B.R. 372, 375 (Bankr. C.D. Ill. 2006) ("[I]t is well-settled that assets owned by a corporation are not included in the bankruptcy estate of an individual shareholder."); *In re Peoples Bankshares, Ltd.,* 68 B.R. 536, 539 (Bankr.

N.D. Iowa 1986) ("Although a debtor owns 100 percent of the stock of a corporation, the property interest of the debtor's bankruptcy estate extends only to the intangible personal property rights represented by the stock certificates . . .").

The sum of this Court's holdings thus far is that the Debtor held a 100% ownership interest in both Coach and its alter ego, Bus.  That pre-petition ownership interest is an asset of the Debtor's bankruptcy estate owned and controlled by the Trustee.  However, because this Court has found that the veil of Coach/Bus cannot be reverse pierced to treat the entity as the alter ego of the Debtor, Coach/Bus maintains a separate existence from the Debtor, and its corporate assets are not property of the Debtor's bankruptcy estate.  Because the corporate assets of Coach/Bus are not property of the estate, the relief requested in the fifth cause of action is denied.

## II.    The Revocation Action, Adv. Proc. No. 12-8095

On March 15, 2012, the Trustee commenced a separate adversary proceeding, 12-08095, pursuant to § 727(d)(1) and (d)(2), seeking to revoke the Debtor's discharge obtained on April 7, 2010.  The Trustee subsequently withdrew the § 727(d)(1) action as it was filed more than one year after entry of the discharge and thus untimely pursuant to § 727(e)(1).  Therefore, the Court will only consider whether the Debtor's discharge should be revoked pursuant to § 727(d)(2). The Trustee contends that subsection (d)(2) warrants revocation of the Debtor's discharge on several grounds.  The Court will consider each ground separately.

### A.  The Debtor's failure to disclose and turnover his interest in Bus

In his post-trial Proposed Findings of Fact and Conclusions of Law, the Trustee asserts that the Debtor "deliberately and with intent failed to disclose the nature and amount of [his] interest" in the "Bus Business and the proceeds thereof" and did not turn them over to the Trustee.

Section 727(d)(2) of the Bankruptcy Code provides that the court shall revoke a discharge if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee." 11 U.S.C. § 727(d)(2).  There is disagreement among courts as to whether § 727(d)(2) applies only to post-petition acquisition of property or whether it also includes property the debtor acquired pre-petition. *Compare In re Savage*, 167 B.R. 22, n.6 (Bankr. S.D.N.Y. 1994) (noting that § 727(d)(2) requires debtors to disclose post-petition acquisitions of property), *and In re Puente,* 49 B.R. 966, 968 (Bankr. W.D.N.Y. 1985) (holding that § 727(d)(2) applies only to entitlement or acquisition of property subsequent to the filing of the petition), *with In re Barr*, 207 B.R. 168, 174 (Bankr. N.D. Ill. 1997) (rejecting the view that § 727(d)(2) is limited to property rights acquired post-bankruptcy and holding that a debtor's discharge may be revoked for failing to report pre-bankruptcy assets).

This Court's finds that § 727(d)(2) may be a basis to revoke a discharge only for knowingly and fraudulently failing to report and turnover property of the estate that the Debtor acquired or became entitled to acquire *post-petition*.  To repeat, § 727(d)(2) applies where "the debtor acquired property that is property of the estate, or became entitled to acquire property that

would be property of the estate." 11 U.S.C. § 727(d)(2).  First, the use of the present tense in the phrase "property that *is* property of the estate" indicates that the property acquired by the debtor was property of the estate at the moment the debtor acquired it. 11 U.S.C. § 727(d)(2) (emphasis added).  Such a scenario can only occur post-petition as there is no estate in which property could be included until the bankruptcy petition is filed. *See* 11 U.S.C. § 541.

Second, § 727(d)(2) warrants revocation if a debtor fails to report a specific event—the "acquisition of or entitlement to" property. 11 U.S.C. § 727(d)(2).  In this Court's view, a debtor's *pre-petition* acquisition of or entitlement to property of the estate would be subsumed in the debtor's obligation to disclose, in the petition and schedules, all legal or equitable interests of the debtor as of the date of the petition.  This type of disclosure failure is captured in other parts of the Code, and it is not the type of failure that, in this Court's view, § 727(d)(2) was intended to capture.  On the other hand, to read § 727(d)(2) to require, subsequent to the documents filed with the original petition, a debtor's disclosure of *post-petition* acquisition of or entitlement to property of the estate provides an important additional safeguard to the bankruptcy process—so important that it provides a basis to revoke the discharge right up until the case is closed.

Third, interpreting § 727(d)(2) to include pre-petition property would render meaningless the time-limits imposed on § 727(d)(1).  Subsection (d)(1) is a broader provision than subsection (d)(2) and provides that the Court may revoke a discharge if it "was obtained through the fraud of the debtor."  11 U.S.C. § 727(d)(1).  Revocation is warranted where the debtor "committed a fraud in fact that if known to the court prior to discharge would have barred the discharge." *In re Peli*, 31 B.R. 952, 955 (Bankr. E.D.N.Y. 1983) (citing 4 *Collier on Bankruptcy* Paragraph 727.04 (15th ed.)); *See also In re George*, 179 B.R. 17, 22 (Bankr. W.D.N.Y. 1995).  One type of fraud contemplated by subsection (d)(1) is "the intentional omission of assets from the debtor's

schedules." *In re Zembko*, 367 B.R. 253, 256 (Bankr. D. Conn. 2007) (quoting 6 *Collier on Bankruptcy* ¶ 727.15 (15th ed. rev.2006)).  *See also In re Peli*, 31 B.R. at 955.  A request to revoke the discharge pursuant to subsection (d)(1) must be made within one year of the discharge, but a request under subsection (d)(2) is timely as long as the case is not closed.  *See* 11 U.S.C. § 727(e)(1),(2).  To read subsection (d)(2) as including a failure to disclose the pre-petition acquisition of or entitlement to property of the estate would be to nullify the one-year limitation of subsection (d)(1).  In other words, if more than one year has passed since the discharge date—and thus subsection (d)(1) would be time-barred—a party could simply bring an action under subsection (d)(2), based on the same facts, as long as the case is not closed.  Therefore, § 727(d)(2) should not be read to include pre-petition property.

The Court has concluded that the Debtor is the 100% owner of Coach—which he disclosed in the petition—and also has a 100% interest Bus by virtue of the piercing of the corporate veils of those entities as to each other.  However, to the extent the Trustee seeks to invoke § 727(d)(2) as a result of the Debtor's alleged knowing and fraudulent failure to disclose his interests in Bus, this claim must fail.  Consistent with the Court's piercing analysis, the Debtor did not acquire or become entitled to acquire an interest in Bus *post-petition*; rather all of the facts to support the piercing analysis were in existence pre-petition and thus the Debtor's interest in Bus was in existence on the date the petition was filed.  *See In re Adler*, 494 B.R. 43, 58 (Bankr. E.D.N.Y. 2013) ("[W]hen a corporate veil is . . . pierced, . . . liability attaches not as of the issue date of any formal piercing judgment; rather, it had attached at the moment in time in which the factual elements of the piercing remedy, as dictated by governing law, had materialized.").

**B. The Debtor's alleged use of refinancing and insurance proceeds relating to buses owned by Tours**

In the Complaint, the Trustee alleges that the Debtor refinanced buses owned by Tours without notice to the Trustee and utilized the proceeds of the refinancing for his own purposes. Furthermore, the Trustee alleges that after one of the buses owned by Tours was involved in an accident,[9] the Debtor utilized the insurance proceeds for his own purposes and did not provide the Trustee with an accounting of those proceeds.

Contrary to the Trustee's allegations, the Trustee has presented no evidence that the Debtor utilized refinancing or insurance proceeds for his own benefit. The Debtor testified that he did not receive any proceeds from the refinancing, and the insurance company sent the insurance proceeds directly to Daimler Truck Financial, the secured lender for the bus. Tr. 8/23/12 at 126-27; Defendants' Ex. A. Thus, there was no acquisition of property for the Debtor to report to the Trustee.

To the extent that the Trustee alleges that the Debtor's discharge should be revoked due to his failure to provide the Trustee with an accounting related to the insurance proceeds, his argument also must fail. First, the record in this case shows that the insurance proceeds were paid directly to Daimler Truck Financial. Moreover, the insurance proceeds, if they would have been paid to Tours and not to Daimler Truck Financial directly, would be corporate assets owned by Tours, which, as explained above, would not be property of the Debtor's bankruptcy estate. Thus, the Debtor did not fail to report "property that is . . . or . . . would be property of the estate." 11 U.S.C. § 727(d)(2).

For these reasons, the Debtor's discharge will not be revoked on these grounds.

---

[9]     According to the Debtor, one bus was involved in an accident and another was destroyed by fire. The insurance proceeds referenced in this allegation relate to the bus destroyed by fire. Tr. 8/23/12 at 126-27.

**C. The Debtor's failure to report the acquisition of assets generated by operations of Coach/Bus and allegedly converted by the Debtor**

As discussed above, § 727(d)(2) warrants revocation of a discharge if a debtor fails to either report or turnover to the Trustee property the debtor acquired or became entitled to acquire post-petition.  Although not entirely clear, the Court construes the Trustee's allegations as asserting that the Debtor's discharge should be revoked based on the Debtor's failure to report or turnover to the Trustee post-petition revenues and intangible assets[10] generated by the operations of Coach and Bus and allegedly converted by the Debtor.   Complaint ¶¶ 44-58.

The record does not support the Trustee's allegations that the Debtor utilized and converted corporate assets for his own benefit.  As previously discussed, the Trustee has presented no evidence that the Debtor used corporate funds for improper purposes.  The Debtor does not dispute that large amounts of cash were used to operate the business, but explained that the cost of operating and maintain the buses is extremely high—for example, fuel and road expenses were reported as $867,307 on Coach's 2008 tax return—and many expenses could only be paid for in cash because he did not have credit.  *See* Tr. 8/23/12 at 47; Tr. 6/23/2011 at 39; Trustee's Ex. 25; Defendants' Post-Trial Brief at 15.  Geraldine Wolk's expert testimony that the "net income as a percentage of total income was reasonably close to the IRS" tax statistics, suggesting that the amount of corporate expenses fell within industry standards, supports a finding that the Debtor did not convert corporate funds for his personal use.  Tr. 12/11/2013 at 22-23.

---

[10]       In response to the Debtor's interrogatory asking the Trustee to "[i]dentify the specific property that the [Debtor] has allegedly failed to turn over to the Trustee, as alleged in paragraph '58' of the complaint," the Trustee responded: "[The Debtor] has failed to turn over the value of Horizon's intangible assets consisting of its goodwill, customer lists and relationships, human capital in the form of Horizon's drivers and its specialized technology." *See* Defendants' Ex. B.

In addition, this Court finds that the assets the Trustee alleges the Debtor failed to report and turnover were always and remain corporate assets of Coach/Bus. While the shares in the corporate entity are property of the estate, the assets of the corporation are not. Therefore, the Trustee's allegations cannot be a basis for revoking the Debtor's discharge under § 727(d)(2).

## CONCLUSION

For all of the foregoing reasons, the Court will not revoke the Debtor's discharge. This determination, however, does not affect the Trustee's 100% ownership interest in Coach/Bus. Although the corporate assets of Coach/Bus are not property of the Debtor's bankruptcy estate, the Debtor's 100% ownership interests in that entity are estate property and pass to the Trustee to be administered for the benefit of the estate.

Judgment will enter in favor of the Trustee on the second cause asserted in the amended complaint, in Adv. Proc. No. 10-8187, in part, finding that the corporate veils of Coach and Bus should be pierced as to each other with the effect being that Coach and Bus are a single business entity owned and controlled by the Debtor, and now the Trustee. Judgment will enter in favor of the Defendants dismissing all other causes of action asserted by the Trustee in both adversary proceedings.

Dated:   Central Islip, New York
      January 17, 2014           **_/s/ Robert E. Grossman_____**
                                    The Honorable Robert E. Grossman
                                    United States Bankruptcy Judge